**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jon Edward Erickson, | No. CV-13-01102-TUC-RM (BGM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, *et al.*, | |
| Respondents. | |

Currently pending before the Court is Petitioner Jon Edward Erickson's *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1). Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 11) and Petitioner replied (Doc. 14). The Petition is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Arizona Court of Appeal stated the facts[2] as follows:

> Erickson met S., the victim in this case, in 2000 and she moved into his home within a month.  Erickson testified at trial that, after moving in, S. had been involved in drug use and "partying."  He testified that as a result he had asked S. to leave, only to allow her back days later, and that this cycle had gone on repeatedly.  In January 2001, after Erickson had spent a week with his wife, from whom he was separated, S. wrote him a letter demanding that he choose between her and his wife.  Erickson testified he had refused to make a choice but had told S. she would have to move out.
>
> On February 2, 2001, Erickson's neighbors called 9-1-1 after finding him outside with blood on his clothing and hands.  When emergency personnel arrived, Erickson was "combative" but did not have any injuries.  Sheriff deputies initially assumed Erickson had been the victim of a stabbing and went to Erickson's home to conduct a "welfare check."  As they approached, they could see through the open front door, S. face-down on the floor and covered in blood.  She was pronounced dead and an autopsy determined she had sustained at least thirty stab wounds, three of which were potentially fatal.
>
> When interviewed by a detective the next day, Erickson initially stated the blood on his clothing had come from a deer he had killed and skinned.  But after he was informed that S. was dead, he stated "it was self-defense."  He explained that S. had tried to kill him by "practicing witchcraft on him" and "crushing his heart" and that he had to kill her.  He stated he had stabbed her ten to fifteen times.

Answer (Doc. 11), Ariz. Ct. of Appeals, Memorandum Decision 1/21/2011 (Exh. "A") at 1.

On February 9, 2001, Petitioner was indicted on and charged with (1) first degree murder; (2) possession of marijuana; and (3) possession of drug paraphernalia.  Answer

---

[2] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

(Doc. 11), Indictment 2/9/2011 (Exh. "B").   On February 11, 2002, a jury found Petitioner guilty on all three (3) counts.   Answer (Doc. 11), Verdict Forms (Exh. "C"). On April 23, 2002, Petitioner was sentenced to an aggravated term of natural life without the possibility of parole for first degree murder[3] and probation for the possession of marijuana and unlawful possession of drug paraphernalia counts.   Answer (Doc. 11), Ariz. Superior Ct., Cochise County, Sentence of Imprisonment 4/22/2002 (Exh. "D") at 2–3 & Sentence of Probation 4/23/2002 (Exh. "D") at 1.   After Petitioner's conviction and sentence, he timely filed a notice of appeal.   Answer (Doc. 11), Def.'s Motion to Remand (Exh. "E") at 2.   A direct appeal was never had, as Defendant's Motion to Remand explained:

> Since that date [of filing the notice of appeal], court reporter Rebecca Hume, who reported most of the trial has failed to produce a complete and accurate record, this court ultimately appointed court reporter Royce Conner to review Ms. Hume's notes and transcriptions and provide a report to the court concerning the ability to obtain a complete record.
>
> On January 23, 2008, this court conducted a hearing at which time Mr. Conner produced his report on Ms. Hume's transcripts and testified concerning the inadequacy of the transcripts.   Counsel undersigned received a copy of that report on February 5, 2008 from the Clerk of Superior Court.   This Motion now follows.
>
> Rule 31. 8, *Arizona Rules of Criminal Procedure* requires that a certified transcript of all hearings and trial dates be provided to the parties and the court of appeals for purposes of pursuing an appeal.   The transcript is due forty-five (45) days after transcripts are ordered.   Six years have now passed and it is clear from Mr. Conner's report and his testimony at the January 23, 2008 hearing that it is impossible to produce a complete and accurate transcript.   As Mr. Conner testified, the transcript is only sixty to seventy percent complete.   Substantial portions of the trial are missing,

---

[3] The trial court also found that this crime qualified as dangerous pursuant to A.R.S. § 13-604 and determined the aggravating factors of heinousness resulting in emotional distress and mutilation of the victim.  Answer (Doc. 11), Sentence of Imprisonment (Exh. "D") at 2–3.

such as the first day of trial, complete examinations of three key State's witnesses, nearly all the cross-examinations on a number of other witnesses, portions of the Defendant's testimony, and portions of closing statements.

Answer (Doc. 11), Def.'s Motion to Remand at 2–3.  At a status hearing, the trial court granted Defendant's Motion to Remand, finding that there was not an adequate record and vacating his convictions and sentences.  Answer (Doc. 11) Ariz. Superior Ct., Cochise County, Minute Entry 1/27/2009 (Exh. "E") at 1.

Petitioner was again tried for first degree murder and found guilty by a jury.  *See* Answer (Doc. 11), Verdict Form 10/9/2009 (Exh. "F").  On December 3, 2009, Petitioner was again sentenced to term of imprisonment "for the remainder of his natural life without the possibility of parole or other possibility of release under any circumstances." Answer (Doc. 11), Ariz. Superior Ct., Cochise County, Sentence of Imprisonment 12/3/2009 (Exh. "G") at 2; *see also* Answer (Doc. 11), Hr'g Tr. 12/2/2009 (Exh. "H"). At the time of sentencing, the State moved to dismiss Counts II and III of the indictment for possession of marijuana and unlawful possession of drug paraphernalia, which were set for trial at a later date.  Answer (Doc. 11), Exh. "H" at 49:16–50:17.  The court granted the motion to dismiss the two remaining counts.  *Id.*

**A.    *Direct Appeal***

On October 6, 2010, Petitioner filed his Opening Brief.  Answer (Doc. 11), Appellant's Opening Br. 10/6/2010 (Exh. "I"); *see also* Petition (Doc. 1), Exh. "A-1." Petitioner's sole issue on appeal was whether there was sufficient evidence to sustain a conviction for first degree murder.  Answer (Doc. 11), Exh. "I" at 15–17.  Relying solely

on state law, Petitioner argued that "[t]he facts of this case simply do not fit the definition of premeditated murder." *Id.*, Exh. "I" at 17.  Accordingly, Petitioner sought "a reversal of his conviction and sentence." *Id.*

On January 21, 2011, the Arizona Court of Appeals affirmed Petitioner's conviction.  Answer (Doc. 11), Ariz. Ct. App. Memorandum Decision 1/21/2011 (Exh. "A"); *see also* Petition (Doc. 1), Exh. "A-3."  Upon review of state law and the evidence presented at trial, the court of appeals held that "the state presented sufficient evidence to support the jury's conclusion that Erickson had committed premeditated, first-degree murder and we will not set aside the conviction." Answer (Doc. 11), Exh. "A" at 6 (citing *State v. Carlisle*, 198 Ariz. 203, ¶ 11, 8 P.3d 391, 394 (Ct. App. 2000)).  On January 21, 2011, Petitioner filed his Petition for Review.  Petition (Doc. 1), Pet. for Review (Exh. "A-3").  On August 1, 2011, the Arizona Supreme Court denied review.  *See* Answer (Doc. 11), Ariz. Supreme Ct. Minute Entry 8/1/2011 (Exh. "J"); *see also* Petition  (Doc. 1), Exh. "A-3."

**B.     *Initial Post-Conviction Relief Proceeding***

On August 11, 2011, Petitioner filed his Notice of Post-Conviction Relief ("PCR").  Answer (Doc. 11), Not. of PCR 8/11/2011 (Exh. "K"); *see also* Petition (Doc. 1), Exh. "B-1."  On June 1, 2012, counsel for Petitioner filed a Petition for Post Conviction Relief.  *See* Answer (Doc. 11), Pet. for PCR 6/1/2012 (Exh. "L"); *see also* Petition (Doc. 1), Exh. "B-2."  Petitioner asserted a single ground for relief, alleging ineffective assistance of trial counsel based on an alleged failure to "adequately present in mitigation at sentencing the overwhelming evidence that Defendant was mentally

- 5 -

psychotic at the time of the murder to the extent that he was significantly impaired in his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."  Answer (Doc. 11), Exh. "L" at 2.  Petitioner further asserted that he "was not merely 'high' on drugs, but was psychotic and extremely impaired."  *Id.*, Exh. "L" at 19.  Moreover, Petitioner argued that although "the Court heard some of the above-cited evidence over the eight days of trial regarding defendant's bizarre behavior, trial counsel failed to specifically recall for the Court any of the evidence at the pre-sentence hearing."  *Id.*, Exh. "L" at 21.  As such, Petitioner asserted that "[h]ad defense counsel properly presented the matter at sentencing, Defendant's psychosis would have been a strong mitigating factor with [a] reasonable probability of altering [the] sentence."  *Id.*

On July 23, 2012, the Rule 32 court determined that the issue regarding trial counsel's alleged failure was "not precluded . . . but [it] d[id] not present a colorable claim."  Answer (Doc. 11), Ariz. Superior Ct., Cochise County, Decision and Order 7/23/2012 (Exh. "M") at 2; *see also* Petition (Doc. 1), Exhibits.  Upon review of the evidence presented at trial, including Petitioner's own testimony, the Rule 32 court found that although "Mr. Erickson had every right to present one defense at trial and then, after that defense failed, to have presented in mitigation a completely inconsistent or even contradictory position[,] . . . merely because inconsistent defenses *may* be offered does not always mean they *should* be offered."  Answer (Doc. 11), Exh. "M" at 4.  The Rule 32 court further stated that "[n]ot only would the psychosis strategy have been inconsistent with defendant's testimony at trial, it would have been inconsistent with

defendant's statements at sentencing." *Id.*, Exh. "M" at 5.  The Rule 32 court also observed that "[t]here is no reason to believe that defense counsel were ignorant of defendant's position — that he was not guilty and should be acquitted — before defendant spoke at sentencing.  Defendant's position seems to have been consistent throughout the proceedings." *Id.*, Exh. "M" at 6.  Finding that Petitioner could not meet either prong of *Strickland*,[4] his ineffective assistance of sentencing counsel claim was denied.  *See id.*, Exh. "M."

On August 6, 2012, the Rule 32 court entered its Order granting Petitioner until October 22, 2012 to file his Petition for Review.  Answer (Doc. 11), Ariz. Superior Ct., Cochise County, Order 8/6/2012 (Exh. "P").  On September 21, 2012, Petitioner filed his Petition for Review in the Arizona Court of Appeals.  *See* Answer (Doc. 11), Pet. for Review 9/21/2012 (Exh. "N").  Petitioner reasserted the sole ground for relief raised in his PCR petition, whether trial counsel was ineffective for allegedly failing to adequately present mitigation evidence at sentencing.  *Id.*, Exh. "N" at 1–2.  On September 25, 2012, the Arizona Court of Appeals issued its order instructing Petitioner "within ten days [to] show why the petition for review should not be dismissed [for untimeliness]."  Answer (Doc. 11), Ariz. Ct. App. Order 9/25/2012 (Exh. "O").  The order further admonished that "if no such showing is made, the petition for review will be dismissed."  *Id.*, Exh. "O."  Review of the Arizona Court of Appeals docket, shows that Petitioner did not respond to the court's directive.  *See* Ariz. Ct. of Appeals, Case No. 2 CA-CR 2012-

---

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

0400-PR, *State of Arizona v. Jon Edward Erickson*, Docket.[5]  In light of Petitioner's

failure to comply with the court's directive, the court of appeals dismissed the Petition for

Review.  Ariz. Ct. of Appeals, Order 10/10/2012 (Exh. "Q").

### C.    Subsequent Post-Conviction Relief Proceeding

On September 24, 2012, Petitioner filed his second Notice of Post-Conviction

Relief ("PCR").  Answer (Doc. 11), Not. of PCR 9/24/2012 (Exh. "R"); *see also* Petition

(Doc. 1), Exh. "C-1."  The Notice claimed Petitioner was entitled to relief based upon

*Martinez v. Ryan*[6].  *See* Answer (Doc. 11), Exh. "R" at 2.  On October 26, 2012, counsel

for Petitioner filed an *Anders*[7] brief with the Rule 32 court.[8]  Answer (Doc. 11), Pet. for

---

[5] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The docket sheet of the Arizona Court of Appeals is proper material for judicial notice.  *See Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051 n. 3 (taking judicial notice of the docket from a proceeding before another tribunal).

[6] — U.S. —, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).

[7] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).

[8] The Arizona Court of Appeals has described the procedure of filing an *Anders* brief as follows:

> Under our procedure, when appointed counsel determines that a defendant's case discloses no arguable issues for appeal, counsel files an *Anders* brief. The brief contains a detailed factual and procedural history of the case, with citations to the record. *See Scott,* 187 Ariz. at 478 n. 4, 930 P.2d at 555 n. 4. Counsel submits the brief to the court and the defendant. The defendant is then given the opportunity to file a brief *pro per.* After receiving all briefing, the court reviews the entire record for reversible error. If any arguable issue presents itself, the court directs appointed counsel to brief the issue. Only after the court has ascertained that counsel has conscientiously performed his or her duty to review the record, and has itself reviewed the record for reversible error and found none, will the court allow counsel to withdraw. *See State v. Shattuck,* 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). We conclude that this procedure permits counsel to perform ethically, while simultaneously ensuring that an indigent defendant's constitutional rights to due process, equal protection, and effective assistance of counsel are protected.

PCR and Mot. to Withdraw and Mot. for Leave to Allow Suppl. *Pro Se* Mem.; Order (Exh. "S").   On December 3, 2012, Petitioner filed his Supplement to Defendant-Petitioner's Notice of Post-Conviction Relief.   Answer (Doc. 11), Suppl. to Def.-Pet.'s Notice of PCR 12/3/2012 (Exh. "T").   Petitioner alleged ineffective assistance of his second trial counsel for not using a forensic specialist, which resulted in Petitioner's first degree murder conviction and life sentence.   *Id.*, Exh. "T" at 3.

On January 23, 2013, the Rule 32 court held Petitioner's contention that defense counsel was ineffective at trial could have been raised in Petitioner's first PCR petition, and because it was not, the issue had been waived.   Answer (Doc. 11), Ariz. Superior Ct., Cochise County, Decision and Order 1/23/2013 (Exh. "U") at 2; *see also* Petition (Doc. 1), Exh. "C-3."   The Rule 32 court further observed that "[e]ven if the claim were not precluded, it would still not be colorable and would not justify an evidentiary hearing." Answer (Doc. 11), Exh. "U" at 2.   The Rule 32 court determined that there was no evidence to show that trial counsel "fell below any applicable standard by not calling Dr. Trepeta."   *Id.*   Moreover, the court stated that it was "not aware of any authority that defense counsel should be found to be ineffective because counsel declines to present ineffective expert testimony."   *Id.*   Accordingly, the Rule 32 court dismissed Petitioner's second PCR petition.   *Id.*, Exh. "U" at 3.

On February 25, 2013, Petitioner filed his Petition for Review with the Arizona

---

*State v. Clark*, 196 Ariz. 530, 537, 2 P.3d 89, 96 (Ct. App. 1999).   The Court notes that because this was a PCR petition, the proper authority was *Montgomery v. Sheldon (I)*, 181 Ariz. 256, 889 P.2d 614 (1995) rather than *Anders.   See State v. Smith*, 184 Ariz. 456, 910 P.2d 1 (1996). Ultimately, the result is the same.

Court of Appeals.  *See* Answer (Doc. 11), Pet. for Review 2/25/2013 (Exh. "V"); *see also* Petition (Doc. 1), Exh. "C-4."  In his Petition for Review, Petitioner sought review of his ineffective assistance of counsel claim pursuant to *Martinez v. Ryan*.  *See* Answer (Doc. 11), Exh. "V."  On June 10, 2013, the Arizona Court of Appeals granted review, but denied relief.  Answer (Doc. 11), Ariz. Ct. of Appeals, Mem. Decision 6/10/2013 (Exh. "W"); *see also* Petition (Doc. 1), Exh. "C-4."  The court of appeals held that it "[could not] say the court abused its discretion to the extent it failed to consider Erickson's claim as one of ineffective assistance of Rule 32 counsel[,] [a]nd it properly concluded that a claim of ineffective assistance of trial counsel was precluded."  *Id.*, Exh. "W" at 3 (citing Ariz. R. Crim. P. 32.2(a)(3)).  The court went on to find that "even assuming *Martinez* could be applied to Erickson's case it does not provide him with a basis for relief."  *Id.*, Exh. "W" at 3.  Accordingly, the court of appeals denied the petition.  *Id.*, Exh. "W" at 4.

### D.     *The Instant Habeas Proceeding*

On September 9, 2013, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1). Petitioner claims nine (9) grounds for relief.  First, Petitioner argues that the evidence presented at trial "was simply not sufficient . . . to sustain a conviction for First Degree Murder."  Petition (Doc. 1) at 6.  Embedded within this broad ground for relief, Petitioner asserts that "[n]either side requested a second degree or lesser instruction; therefor [sic] the jury was left with the all or nothing proposition of conviction for First Degree Murder."  *Id.*  With this sub-issue, Petitioner is alleging ineffective assistance of trial counsel, as well as insufficient jury instructions.  *See id.*  Second, Petitioner alleges

- 10 -

ineffective assistance of trial counsel based upon "his [alleged] failure to adequately present in mitigation at sentencing, the overwhelming evidence that defendant was mentally psychotic at the time of the murder to the extent that defendant was significantly impaired in his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Id.* at 7.   Third, Petitioner claims "ineffective assistance of post-conviction attorney, [who] did not bring up several issues that could be taken to the Federal Courts supported by "Martinez v. Ryan." *Id.* at 8.   Petitioner indicates that Grounds Four (4) through Eight (8) represent those claims which the ineffectiveness of his PCR counsel denied him.  Petition (Doc. 1) at 8.  Fourth, Petitioner alleges ineffective assistance of trial counsel for an alleged failure to present expert witness testimony. *Id.* at 10.  Petitioner presents three (3) distinct sub-issues, including (1) an alleged failure by counsel to submit a toxicology report, where there was a "reasonable probability that jurors would have believed defendants [sic] self defense [sic] claim had they known [the Victim] was intoxicated and under influence [sic] during attack . . . [and] would of [sic] also proven that defendant was not intoxicated or under influence [sic] during the attack[;]" (2) an alleged failure by counsel "to submit a forensic specialist to argue Prosecutors [sic] medical examiner was prejudicial because reasonable probability that jurors would have believed defendants [sic] self defense [sic] claim . . . [that] defendant was underneath [the victim] fighting for his life[;]" and (3) an alleged failure by counsel "to produce a psychologist because reasonable [sic] probability that jurors would have believed defendants [sic] self-defense claim had they known Defendant was suffering from Post tramatic [sic] stress disorder after the attack on

defendants [sic] life."  *Id.* at 11.  Fifth, Petitioner asserts that his Constitutional rights were violated because "the *Miranda*[9] Warnings were not read to [him]."  As an initial matter, Petitioner asserts that Detective Wheeler "refused" to use the tape recorder while Petitioner was in the hospital, and further accuses the detective of manipulating the comments that Petitioner made over a period of time "into one set of comments."  *Id.* at 12.  Petitioner further asserts that Detective Wheeler did not read him the *Miranda* warnings prior to questioning at the police station.  *Id.*  Sixth, Petitioner asserts that the officers' warrantless entry into his home, as well as the subsequent seizure of evidence, violated his Fourth Amendment rights.  Petition (Doc. 1) at 13.  Seventh, Petitioner asserts that the "[j]ury instructions were insufficient to protect defendant from substantial prejudice."  *Id.* at 14.  Specifically, Petitioner believes that defense counsel should have "brought up jury instruction 'use of force in crime prevention'" and that he only used force in self-defense.  *Id.*  Eighth, Petitioner alleges that his second trial violated the Fifth Amendment's Double Jeopardy Clause.  *Id.* at 15.  Ninth, Petitioner alleges that his Sixth Amendment rights were violated because "Judge Hoggatt showed extreme prejudice due to the fact that he was a Judge through out [sic] several other proceedings that he had with defendant which were all overturned."  *Id.* at 16.  On January 30, 2014, Respondents filed their Answer (Doc. 11).  On February 12, 2014, Petitioner replied (Doc. 14), which included a line by line refutation of Respondents' Answer.

. . .

. . .

---

[9] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

1

2

## II.    STANDARD OF REVIEW

3

### A.  In General

4

The federal courts shall "entertain an application for a writ of habeas corpus in

5

behalf of a person in custody pursuant to the judgment of a State court only on the ground

6

that he is in custody *in violation of the Constitution or laws of treaties of the United*

7

*States*."  28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus

8

9

by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the claim – (1)
> resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398,

179 L.Ed.2d 557 (2011).  Correcting errors of state law is not the province of federal

habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116

L.Ed.2d 385 (1991).  Ultimately, "[t]he statute's design is to 'further the principles of

comity, finality, and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct.

2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337,

123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).  Furthermore, this standard is difficult to meet

and highly deferential "for evaluating state-court rulings, [and] which demands that state-

court decisions be given the benefit of the doubt."  *Pinholster*, 131 S.Ct. at 1398

(citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review. *See* 28 U.S.C. § 2254. The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013). Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at 473, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result. *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 10 (quoting *Harrington*, 562 U.S. at 103, 131 S.Ct. at 786–87) (alterations in original).

. . .

. . .

### B. Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed. 2d 64 (2004) (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal citations omitted). This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure the question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The fair presentation requirement mandates that a state prisoner must alert the state court "to the

presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349. "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for

the same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346,

350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C.  Procedural Default

"A habeas petitioner who has defaulted his federal claims in state court meets the

technical requirements for exhaustion; there are no state remedies any longer 'available'

to him."  *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d

650 (1991).  Moreover, federal courts "will not review a question of federal law decided

by a state court if the decision of that court rests on a state law ground that is independent

of the federal question and adequate to support the judgment."  *Id.*, 501 U.S. at 728, 111

S.Ct. at 2254.  This is true whether the state law basis is substantive or procedural.  *Id.*

(citations omitted).  Such claims are considered procedurally barred from review.  *See*

*Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit Court of Appeals explained the difference between exhaustion

and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been
> presented with an opportunity to consider a petitioner's claims and that
> opportunity may still be available to the petitioner under state law.  In
> contrast, the procedural default rule barring consideration of a federal claim
> applies only when a state court has been presented with the federal claim,
> but declined to reach the issue for procedural reasons, or if it is clear that
> the state court would hold the claim procedurally barred.  *Franklin v.*
> *Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and
> citations omitted).  Thus, in some circumstances, a petitioner's failure to
> exhaust a federal claim in state court may *cause* a procedural default.  *See*
> *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*,
> 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if
> the petitioner failed to exhaust state remedies and the court to which the
> petitioner would be required to present his claims in order to meet the
> exhaustion requirement would now find the claims procedurally barred.'")

(quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005). Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds. *Coleman*, 501 U.S. at 728, 111 S.Ct. at 2254. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted). Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)) (emphasis in original).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986)

(recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). In addition to cause, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982)). "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113

S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862.  Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3).  "If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim."  *Id.*, 2002 cmt.  Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver.  *See id.*; *see also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations."  *Cassett*, 406 F.3d at 622.

. . .

. . .

. . .

- 20 -

## III.   STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation.  *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).   The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.   28 U.S.C. § 2244(d)(1).   Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).   "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2).   Respondents provided a thorough analysis, and do not dispute the timeliness of Erickson's petition.  *See* Answer (Doc. 11) at 6–8.  Despite this, "Petitioner believes state [sic] has intentionally mis-stated [sic] the finding of the Court concerning Petitioners

timely filing."  Reply (Doc. 14) at ¶ 6.  The Court has independently reviewed the record and finds that the Petition (Doc. 1) is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

## IV.   ANALYSIS

### A.   *Ground One: Sufficiency of the Evidence to Sustain First Degree Murder*

Petitioner asserts that "the evidence, while sufficient to sustain a guilty verdict for Second Degree Murder or lesser[,] was simply not sufficient under the facts to sustain a conviction for First Degree Murder."  Petition (Doc. 1) at 6.  Petitioner further argues that "neither side requested a second degree or lesser instruction" and that the "jury instructions were minimal."  *Id.*  Petitioner claims that "there simply was no evidence to sustain a finding of premeditation."  *Id.*  Respondents acknowledge that Petitioner raised this claim in state court; however, they assert that it was only raised on state law grounds and is therefore unreviewable in habeas.  Answer (Doc. 11) at 10–11.

In his brief for direct review to the Arizona Court of Appeals, Petitioner's sole issue on appeal was whether there was sufficient evidence to sustain a conviction for first degree murder."  Answer (Doc. 11), Appellant's Opening Br. 10/6/2010 (Exh. "I") at 15–17.  Petitioner's argument relied solely on state law.  *Id.*, Exh. "I" at 17.  Upon review of state law and the evidence presented at trial, the Arizona Court of Appeals held that "the state presented sufficient evidence to support the jury's conclusion that Erickson had committed premeditated, first-degree murder and we will not set aside the conviction."  Answer (Doc. 11), Ariz. Ct. of Appeals, Mem. Decision 1/21/2011 (Exh. "A") at 6 (citing *State v. Carlisle*, 198 Ariz. 203, 11, 8 P.3d 391, 394 (Ct. App. 2000)).

Prior to bringing a claim to federal court, a habeas petitioner must present all claims first to the state court. *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).

Here, Petitioner only relied on state law in presenting his claim regarding the sufficiency of the evidence to sustain a first degree murder conviction to the state court. *See* Answer (Doc. 11), Exh. "I" at 15–17. The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *See Baldwin v. Reese*, 541 U.S. at 33, 124 S.Ct. at 1351; *Hiivala v. Wood*, 195 F.3d 1098. As such, it cannot be said that he fairly presented the claim to the state courts and therefore it is unexhausted.

Accordingly, Petitioner's claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to

present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").   Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).   Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  Petitioner's claim regarding the sufficiency of the evidence is without merit.[10]

. . .

. . .

---

[10] To the extent that Petitioner separately challenges the jury instructions in his case or alleges ineffective assistance of counsel regarding the jury instructions, such claims must also fail.  Neither was presented to the state court and Petitioner would be precluded from doing so now.   Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a)(3), 32.4.   As such, Petitioner's claims are procedurally defaulted.  *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.  Moreover, Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).  To the extent that Petition is seeking relief from the procedural default pursuant to *Martinez v. Ryan*, such a claim is not substantial and therefore without merit.  *See* Section IV.B.3., *infra*.

### B.   Grounds Two, Three, Four, and Seven:   Ineffective Assistance of Counsel

#### 1. Legal Standards

For cases which have been fairly presented to the State court, the Supreme Court elucidated a two part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Petitioner must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, Petitioner must show that this performance prejudiced his defense. *Id.* Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* Ultimately, whether or not counsel's performance was effective hinges on its reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *see also State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims). The Sixth Amendment's guarantee of effective assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2065. "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)

(quoting *Strickland*, 466 at 686) (emphasis and alteration in original).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]" *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (citations omitted). Judging counsel's performance must be made without the influence of hindsight. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on his ineffectiveness claim. *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071. "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Gentry v. Sinclair*, 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788) (alterations in original). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Accordingly, "[w]e apply the doubly deferential standard to review the state court's 'last reasoned decision.'" *Vega v. Ryan*, 757 F.3d 960, 966 (9th Cir. 2014) (citations omitted). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in 2254(d)(1) and (d)(2)." *Harrington*, 131 U.S. at 98, 131 S.Ct. at 784. As such, Petitioner

also bears the burden of showing that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698–99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002); *see also* 28 U.S.C. § 2254(d).

Additionally, "[a]s a general matter, each 'unrelated alleged instance [ ] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)) (alterations in original). This means "all operative facts to an ineffective assistance claim must be presented to the state courts in order for a petitioner to exhaust his remedies." *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007). This is "[b]ecause ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to it[.]" *Id.* As such, "a petitioner who presented any ineffective assistance of counsel claim below can[not] later add unrelated instances of counsel's ineffectiveness to that claim." *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts, does not exhaust other claims of ineffective assistance based on different facts").

### 2.  Ground Two:  Ineffective Assistance of Trial Counsel Regarding Mitigation Evidence at Sentencing

Petitioner claims that his trial counsel was ineffective for failing to "present at sentencing any of the evidence available reguarding [sic] defendants [sic] psychotic mental state at the time of the offense, nor any expert witness or treatise on the issue."

Petition (Doc. 1) at 7.   Respondents assert that Petitioner failed to exhaust this claim, because he did not present it to the Arizona Court of Appeals.   Answer (Doc. 11) at 11–12.   The Court agrees with Respondents.

Petitioner raised this claim in his initial PCR Petition.   *See* Answer (Doc. 11), Pet. for PCR (Exh. "L").   The Rule 32 court reviewed the evidence presented at trial, including Petition's own testimony, as well as his statements at sentencing and recognized that "[n]ot only would the psychosis strategy have been inconsistent with defendant's testimony at trial, it would have been inconsistent with defendant's statements at sentencing."   Answer (Doc. 11), Ariz. Superior Ct., Cochise, County, Decision and Order 7/23/2012 (Exh. "M") at 5.   Ultimately, the Rule 32 court held that Petitioner could not meet either prong of *Strickland*, and denied his ineffective assistance of sentencing counsel claim.

Petitioner reasserted this claim in his Petition for Review to the Arizona Court of Appeals.   *See* Answer (Doc. 11), Pet. for Review 9/21/2012 (Exh. "N").   On September 25, 2012, the court of appeals issued its order instructing Petitioner "within ten days [to] show why the petition for review should not be dismissed [for untimeliness]."   Answer (Doc. 11), Ariz. Ct. App. Order 9/25/2012 (Exh. "O").   Despite having sought leave from the Rule 32 court to extend the time to file his Petition, Petitioner never responded to the court's directive.   *See* Answer (Doc. 11), Ariz. Superior Ct., Cochise County, Order 8/6/2012 (Exh. "P"); Ariz. Ct. of Appeals, Case No. 2 CA-CR 2012-0400-PR, *State of Arizona v. Jon Edward Erickson*, Docket.   In his Reply (Doc. 14), Petitioner reasserts his belief that his Petition for Review was timely, attaching the Bureau of Prisons' ("BOP")

outgoing legal mail log; however, this only shows that a letter was sent to the court of appeals on September 19, 2012, five (5) days prior to the court's order to show cause. Pet.'s Reply (Doc. 14) at 13–14 & Exh. "1B."

Because the Arizona Court of Appeals dismissed Petitioner's Petition for Review based on timeliness, the claim is unexhausted and would now be precluded.  Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a)(3), 32.4; *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court").  Accordingly, Petitioner's claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also*

1  *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer

2  any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on

3  which to address the merits of his claims.").   Moreover, the Arizona Court of Appeals

4  denied relief based on independent and adequate state law grounds.  *See Coleman v.*

5  *Thompson*, 501 U.S. 722, 728, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 650 (1991). This state

6  procedural bar to review now prohibits this Court from review because the "state law

7  determination [] is sufficient to support the judgment, [and] resolution of any independent

8  federal ground for the decision could not affect the judgment and would therefore be

9  advisory."  *Coleman*, 501 U.S. at 728, 111 S.Ct. at 2254.   Therefore, Petitioner's claim

10  for ineffective assistance of counsel based on an alleged failure to present mitigation

11  evidence at sentencing cannot stand.

### 3.  Ground Three:  Ineffective Assistance of Post-Conviction Relief Counsel

17  Petitioner claims that his PCR counsel was ineffective for "not bring[ing] up

18  several issues that could be taken to the Federal Courts supported by 'Martinez v. Ryan'

19  March 20, 2012."  Petition (Doc. 1) at 8.

21  As an initial matter, "there is no constitutional right to counsel in state PCR

22  proceedings."  *Detrich v. Ryan*, 740 F.3d 1237, 1243 (9th Cir. 2013) (citing *Coleman v.*

23  *Thompson*, 501 U.S. 722, 753–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).   As such,

24  "[t]he Supreme Court has held that state post-conviction review counsel's ineffective

25  assistance cannot serve as cause to excuse the procedural default of claims."  *Pizzuto v.*

26  *Ramirez*, 783 F.3d 1171 (9th Cir. 2015) (citing *Coleman*, 501 U.S. at 752–54, 111 S.Ct.

2546).  "*Martinez* established a 'narrow exception' to *Coleman*'s procedural default principle:  'Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.'"  *Pizzuto*, 783 F.3d at 1176–77 (quoting *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012)).  In *Martinez*, the Supreme Court observed that "[t]hese rules [under which a prisoner may establish cause to excuse a procedural default] reflect an equitable judgment that only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default."  *Martinez*, 132 S.Ct. at 1318 (citations omitted).  "In applying this standard, *Martinez* made clear that a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, *and* whether there is prejudice."  *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (citing *Martinez*, 132 S.Ct. at 1321.

In delineating this rule the Supreme Court expressly limited its holding stating:

> The rule of *Coleman* governs in all but the limited circumstances recognized here.  The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 132 S.Ct. at 1320.

Here, Petitioner's broad allegation of ineffective assistance of PCR counsel does

not fall within the "narrow exception" defined in *Martinez*.  Under *Coleman*, Petitioner did not have a right to effective assistance of PCR counsel.  Furthermore, in this claim, Petitioner does not allege that PCR counsel failed to allege an ineffective assistance of trial counsel claim.  Accordingly, Petitioner's Ground Three is without merit and shall be denied.

### 4. Ground Four: Ineffective Assistance of Trial Counsel

#### a. Toxicology Report

Petitioner claims that his trial counsel was ineffective for failing "to submit a toxicology report [which] was prejudicial because reasonable [sic] probability that jurors would have believed defendants self defense [sic] claim had they known [the victim] was intoxicated and under influence [sic] during attack[.]"  Petition (Doc. 1) at 10.  Respondents assert that "[t]his claim is not supported by the evidence."  Answer (Doc. 11) at 17.

Petitioner did not raise this claim in the state courts.  As such, the claim is unexhausted and would now be precluded.  *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a)(3), 32.4.  Accordingly, Petitioner's claim is procedurally defaulted.  *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.  Because this claim involves an alleged ineffective assistance of PCR counsel in the failure to allege ineffective assistance of trial counsel, the Court must consider whether Petitioner has shown "cause" to excuse this procedural default under the "narrow circumstance" delineated by *Martinez*.

Petitioner bears the burden to show that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate

that the claim has some merit." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 127, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).  Petitioner cannot meet this burden.  Corporal Gary Zickefoose testified that he was the case officer, and four (4) blood vials taken from the victim were submitted to the Arizona Department of Public Safety ("DPS") for analysis.  Answer (Doc. 11), Hr'g Tr. Jury Trial Day 4 10/1/2009 (Exh. "X") at 153:3–155:9.  Corporal Zickefoose further testified that the results of that analysis showed that the victim's blood showed it contained methamphetamine and amphetamine.  *Id.*, Exh. "X" at 155:18–157:3; *see also* Answer (Doc. 11), Ariz. DPS Scientific Exam. Rpt. (Exh. "Y").  Additionally, Ms. Melinda Raines, an Arizona DPS employee, testified that she performed the confirmation toxicology drug screen of Petitioner's blood.  Answer (Doc. 11), Hr'g Tr. Jury Trial Day 3 9/30/2009 (Exh. "AA") 158:9–25, 170:14–172:3.  Ms. Raines further testified that the blood sample contained amphetamine and methamphetamine.  *Id.*, Exh. "AA" 172:4–173:10.  The jury heard testimony regarding the presence of drugs in the systems of both Petitioner and the victim in this case.  As such, the Court finds that Petitioner's claim that trial counsel was ineffective for failing to introduce a toxicology report is not substantial and he cannot establish cause to excuse the procedural default of this claim.

### b. Forensic Specialist

Petitioner claims that his trial counsel was ineffective for failing "to submit a forensic specialist to argue Prosecutors [sic] medical examiner was prejudicial because reasonable probability that jurors would have believed defendants [sic] self defense [sic] claim."  Petition (Doc. 1) at 10.  Petitioner further argues that "[a] forensic [sic] would

have proven all wounds were inflicted while defendant was underneath [the victim] fighting for his life[,] and it would have also proven that there were no post mortum [sic] stab wounds which would have proven defendant stoped [sic] fighting for his life once he was safe[.]"  *Id.*  Respondents assert that "*Martinez* does not apply to this claim because the PCR court addressed this claim on the merits in addition to finding it precluded." Answer (Doc. 11) at 18.  The Court agrees with Respondents.

Petitioner initially raised this issue in his second PCR Petition.  Answer (Doc. 11), Suppl. to Def.-Pet.'s Notice of PCR 12/3/2012 (Exh. "T") at 3.  The Rule 32 court held that Petitioner's contention that defense counsel was ineffective at trial could have been raised in Petitioner's first PCR petition, and because it was not, the issue had been waived.  Answer (Doc. 11), Ariz. Superior Ct., Cochise County, Decision and Order 1/23/2013 (Exh. "U") at 2.  The Rule 32 court further observed that "[e]ven if the claim were not precluded, it would still not be colorable and would not justify an evidentiary hearing . . . [because there was no evidence to show that trial counsel] fell below any applicable standard by not calling Dr. Trepeta."  *Id.*, Exh. "U" at 2.

Petitioner again raised this issue to the Arizona Court of Appeals.  Answer (Doc. 11), Pet. for Review 2/25/2013 (Exh. "V").  The court of appeals upheld the Rule 32 court's conclusion, as well as indicating that even assuming *Martinez* could apply, it does not provide a basis for relief.

"PCR counsel [can]not be ineffective for [a] failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective."  *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).  "[T]he question is

not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."   *Gentry v. Sinclair*, 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788) (alterations in original).   "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"   *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

Here, Petitioner has failed to demonstrate deficient performance, and the Arizona courts did not unreasonably apply clearly established Federal law.   *See Gulbrandson v. Ryan*, 738 F.3d 976, 991 (9th Cir. 2013).   As such, Petitioner's ineffective assistance of counsel claim regarding counsel's alleged failure to submit a forensics expert must fail. *See Strickland*, 466 U.S. at  687, 104 S.Ct. at 2064.

### c.  Expert Psychologist

Petitioner claims that his trial counsel was ineffective for his alleged failure "to produce a psychologist."  Petition (Doc. 1) at 11.  Petitioner claims that he "was suffering from post tramatic [sic] stress disorder after the attack[.]"  *Id.*  Respondents assert that Petitioner's claim lacks merit.  *See* Answer (Doc. 11) at 20–21.

Prior to his first trial, a defense expert evaluated Petitioner and opined "that Mr. Erickson did not suffer a mental disease or defect at the time of the instant offense." Answer (Doc. 11), Morris Ltr. to Malanga 12/17/2001 (Exhibit "A" to Def.'s Mot. for Reconsideration (Mental Evaluation)) (Exh. "FF").  Similarly, the State's expert opined that:

[T]there is no current evidence of a mental disorder in this individual . . . [and] [a]s to his mental condition at the time of the alleged offense, the statements he made obviously sound delusional and may indicate a psychotic condition.  However, there is little more evidence to go on.  A strong possibility here is that he was under the influence of stimulants such as cocaine and/or amphetamines which are well known to produce a paranoid psychosis with psychotic states occasionally leading to violence.

Answer (Doc. 11), LaWall Ltr. to Judge Collins 1/3/2002 (Exh. "GG") at 3.

Petitioner did not raise this claim in the state courts.  As such, the claim is unexhausted and would now be precluded.  *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a)(3), 32.4.  Accordingly, Petitioner's claim is procedurally defaulted.  *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.  Because this claim involves an alleged ineffective assistance of PCR counsel in the failure to allege ineffective assistance of trial counsel, the Court must consider whether Petitioner has shown "cause" to excuse this procedural default under the "narrow circumstance" delineated by *Martinez*.

Petitioner bears the burden to show that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 127, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).  Petitioner cannot meet this burden.  As discussed above, Petitioner was originally evaluated by two (2) different psychologists.  There is nothing in the record before the Court that would suggest he suffered from Post-Traumatic Stress Disorder or any other mental disease or disorder that would warrant his second trial counsel obtaining a psychological expert witness.  The Court finds Petitioner's ineffective assistance of counsel claim is not substantial, and as such his failure to raise this claim before the state

court should not be excused.

### 5.  Ground Seven:  Ineffective Assistance of Trial Counsel Regarding Jury Instructions

Petitioner claims that his trial counsel was ineffective because the "[j]ury instructions were insufficient to protect defendant from substantial prejudice."  Petition (Doc. 1) at 14.  More specifically, Petitioner asserts that defense counsel should have "brought up jury instruction 'use of force in crime prevention[.]'"  *Id.*  Petitioner argued that this instruction would have proven "only use of force was applied [sic] while defendants [sic] life was in danger and no excessive force was used."  *Id.*  Respondents assert that because there "is no material difference between crime prevention or self-defense in this case[,] [t]rial counsel was not ineffective for failing to specifically request a crime prevention instruction."  Answer (Doc. 11) at 25.

Petitioner did not raise this claim in the state courts.  As such, the claim is unexhausted and would now be precluded.  *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a)(3), 32.4.  Accordingly, Petitioner's claim is procedurally defaulted.  *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.  Because this claim involves an alleged ineffective assistance of PCR counsel in the failure to allege ineffective assistance of trial counsel, the Court must consider whether Petitioner has shown "cause" to excuse this procedural default under the "narrow circumstance" delineated by *Martinez*.

Section 13-411, Arizona Revised Statutes, defines the justification defense "use of force in crime prevention."  A.R.S. § 13-1411.  Section 13-411 provides:

> **A.** A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person

reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of . . . second or first degree murder . . . or aggravated assault . . . .

**B.** There is no duty to retreat before threatening or using physical force or deadly physical force justified by subsection A of this section.

**C.** A person is presumed to be acting reasonably for the purposes of this section if the person is acting to prevent what the person reasonably believes is the imminent or actual commission of any of the offenses listed in subsection A of this section.

**D.** This section includes the use or threatened use of physical force or deadly physical force in a person's home, residence, place of business, land the person owns or leases, conveyance of any kind, or any other place in this state where a person has a right to be.

A.R.S. § 13-411.  The Arizona Supreme Court described the three ways that this section differs from other justification defenses as follows:

Although the only limitation upon the use of deadly force under § 13-411 is the reasonableness of the response, the other justification defenses require an immediate threat to personal safety before deadly force may be used. [*State v. *]*Thomason*, 162 Ariz. [363,] 365, 783 P.2d [809,] 811 [(Ct. App. 1989)].  Section 13-411 is also more permissive because not all of the enumerated crimes are inherently life-threatening.  Finally, § 13-411(C) provides a presumption of reasonableness not available under the other justification sections.  *Id.* at 365–66, 783 P.2d at 811–12; *see generally* R. Gerber, *Criminal Law of Arizona* 64–66 (1978).

*State v. Korzep*, 165 Ariz. 490, 492, 799 P.2d 831, 833 (1990) ("*Korzep II*").  At the time of Petitioner's trial, Arizona law found the presumption of reasonableness to be a rebuttable one.  *See State v. Martinez*, 202 Ariz. 507, ¶ 17, 47 P.3d 1145, 1148 (Ct. App. 2002).  The Arizona Court of Appeals observed that "the effect of the crime prevention privilege is to allow a person to use force in preventing a crime, rather than compel him to await the commission of the unlawful act."  *Korzep v. Superior Court*, 172 Ariz. 534, 838 P.2d 1295 (Ct. App. 1991) ("*Korzep III*").

Here, Defendant testified that he killed the victim, because:

> She was going to take my life.  She was straight killing me.  I couldn't breathe no more.  I was suffocating.  I had to do everything I could to survive that day.  There's no doubt in my mind had I blacked out she would have killed me.  If I wouldn't have been able to restrain the knife I would have been dead.

Answer (Doc. 11), Hr'g Tr. Jury Trial Day Six 10/7/2009 (Exh. "QQ") at 13:14–18.  It is undisputed that this case involved deadly physical force and whether that force was justified in self-defense.  *See id.*, Exh. "QQ" at 65:1–66:15.  The trial court instructed the jury on self-defense as follows:

> The state has the burden of proof to establish beyond a reasonable doubt that the defendant did not act in self-defense.  If the state fails to carry this burden, then you must find the defendant not guilty.
>
> A defendant is justified in using or threatening physical force in self-defense if the following two conditions existed:
>
> 1.  A reasonable person in the situation would have believed that physical force was immediately necessary to protect against another's use or apparent attempted or threatened use of unlawful physical force, and
>
> 2.  The defendant used or threatened no more physical force than would have appeared necessary to a reasonable person in the situation.
>
> A defendant may use deadly physical force in self-defense only to protect against another's use or apparent attempted or threatened use of deadly physical force.  Self-defense justifies the use or threat of physical force or deadly physical force only while the apparent danger continues, and it ends when the apparent danger ends.  The force used may not be greater than reasonably necessary . . . to defend against the apparent danger.
>
> The use of physical force or deadly physical force is justified if a reasonable person in the situation would have reasonably believed that immediate physical danger appeared to be present.  Actual danger is not necessary to justify the use of physical force or deadly physical force in self-defense.
>
> You must decide whether a reasonable person in a similar situation

would believe that:

1.   Physical force was immediately necessary to protect against another's use of unlawful physical force, or

2.   Deadly physical force was immediately necessary to protect against another's use of unlawful deadly physical force.

You must measure the defendant's belief against what a reasonable person in the situation would have believed.

Apparent deadly force can be met with deadly force so long as the defendant's belief as to the apparent deadly force is a reasonable one.

The defendant is not required to retreat before he may act lawfully in killing in self-defense.  This rule applies even if it appears that safety might more easily have been gained by the defendant by withdrawing from the scene or flight.

Deadly physical force means either:

1.   Force that is used with the purpose of causing death or serious physical injury, or . . .

2. Force, depending on its manner of use or intended use, which is capable of creating a substantial risk of causing death or serious physical injury.

Answer (Doc. 11), Hr'g Tr. Jury Trial Day 7 10/8/2009 (Exh. "RR") at 9:17–12:12.  In light of the facts and circumstances of this case, a jury instruction regarding the crime prevention justification would not be materially different from the self-defense instruction given.  *Compare* A.R.S. § 13-411 *with* Answer (Doc. 11), Exh. "RR" at 9:17–12:12.  In light of this, it cannot be said that trial counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id. Strickland v. Washington*, 466 U.S. 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Petitioner bears the burden to show that "the underlying ineffective-assistance-of-

trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 127, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).  Petitioner cannot meet this burden.  Accordingly, the Court finds Petitioner's ineffective assistance of counsel claim is not substantial, and as such his failure to raise this claim before the state court should not be excused.

### C.     Ground Five:  Miranda Violations

Petitioner asserts that he was not given his *Miranda* warnings.  Petition (Doc. 1) at 12.  Petitioner takes issue with his statements made at the hospital, as well as those made at the jail during the interview with Detective Wheeler.  *Id.*  Petitioner further states that "these are issues my Post Conviction Attorney did not bring up."  *Id.*

"The Supreme Court has held that state post-conviction review counsel's ineffective assistance cannot serve as cause to excuse the procedural default of claims." *Pizzuto v. Ramirez*, 783 F.3d 1171 (9th Cir. 2015) (citing *Coleman*, 501 U.S. at 752–54, 111 S.Ct. 2546).  As discussed in Section IV.B.3, a claim alleging error on the part of PCR counsel does not fall within the narrow exception provided by *Martinez*.  Moreover, "[p]ermitting claims of trial error to be considered ineffective assistance of counsel claims because an effective attorney would have prevented or remedied that purported error would expand *Martinez* to include all potential errors and make the limitations [the Ninth Circuit Court of Appeals] stated in *Hunton* [*v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) ] and [*Ha Van* ] *Nguyen* [*v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013) ] nonsensical."  *Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015).  The Court

further notes that "a PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). Moreover, Petitioner's claim is not supported by the record in this case. Accordingly, Petitioner's claim is without merit.

### D.      Ground Six: Search and Seizure

Petitioner asserts that "[p]robable cause alone is insufficient to justify warrantless Entry [sic] into a persons [sic] home." Petition (Doc. 1) at 13. Petitioner argues that the officers' entry into his home without a warrant or consent was in violation of the Fourth Amendment warranting suppression of the evidence seized as a result of that search. *Id.* Petitioner further states that his "Post Conviction Attorney failed to bring up these issues." *Id.*

As discussed in Sections IV.B.3. and IV.C., *supra*, a claim alleging error on the part of PCR counsel does not fall within the narrow exception provided by *Martinez*. Additionally, Petitioner's claim is not supported by the record in this case. Accordingly, Petitioner's claim is without merit.

### E.      Ground Eight: Double Jeopardy

Petitioner asserts that vacating his original conviction and retrying the case because of the incomplete record after the original trial was a violation of the Double Jeopardy clause. Petition (Doc. 1) at 15. Petitioner further asserts that his "Post Conviction Attorney failed to bring up these issues." *Id.*

As discussed in Sections IV.B.3. and IV.C., *supra*, a claim alleging error on the

part of PCR counsel does not fall within the narrow exception provided by *Martinez*. Additionally, Petitioner's claim is not supported by the record in this case. Accordingly, Petitioner's claim is without merit.

### F.   Ground Nine: Judicial Prejudice

Petitioner asserts that "Judge Hoggatt showed extreme prejudice due to the fact that he was a Judge through out [sic] several other proceedings that he had with the defendant which were all overturned." Petition (Doc. 1) at 16. Petitioner argues that "[i]f I would of [sic] had a fair and partial judge my outcome more than likely would have been different." *Id*. Petitioner further states that "Ground three [ineffective assistance of PCR counsel] expresses the issues not raised which I am doing now." *Id*.

As discussed in Sections IV.B.3. and IV.C., *supra*, a claim alleging error on the part of PCR counsel does not fall within the narrow exception provided by *Martinez*. Additionally, Petitioner's claim is not supported by the record in this case. Accordingly, Petitioner's claim is without merit.

### G.   Claims in Reply

Any new issues raised for the first time in Petitioner's reply brief are waived. *See United States v. Anekwu*, 695 F.3d 967, 985 (9th Cir. 2012), *cert . denied*, — U.S. —, 133 S.Ct. 2379, 185 L.Ed.2d 1094 (2013); *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005). As such, the Court declines to address any additional issues that Petition raised in his Reply.

### H.   Conclusion

In light of the foregoing, the Court finds that Petitioner's habeas claims are

without merit, and the Petition (Doc. 1) shall be denied.

## V.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1);

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number:  **CV-13-1102-TUC-RM**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.  The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 9th day of August, 2016.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge